**Charmaine TIMM, Plaintiff–Appellee,**

v.

**PROGRESSIVE STEEL TREATING, INC., Defendant–Appellant.**

No. 97–2803.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1998.

Decided March 4, 1998.

Rene Hernandez (argued), Belvidere, IL, for Plaintiff–Appellee.

James D. Zeglis (argued), Rockford, IL, for Defendant–Appellant.

Before CUDAHY, EASTERBROOK, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

A jury awarded punitive but not compensatory damages in this sex-discrimination suit. Progressive Steel Treating, the employer, contends that punitive damages cannot be awarded when the jury determines that the plaintiff did not suffer injury.

Charmaine Timm, the plaintiff, testified that co-worker Craig Tunnell frequently snuck up from behind her and grabbed or pinched her buttocks. Less frequently Tunnell would run his hand up her thighs. Sexual comments and propositions from Tunnell were everyday fare, according to Timm, despite her protests. A reasonable jury could conclude that the combination of unwelcome remarks and battery were sex discrimination under *Meritor Savings Bank, fsb v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), and *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). But an employer is responsible for a co-worker's acts only if it knew (or should have known) about the problem. *Zimmerman v. Cook County Sheriff's Department,* 96 F.3d 1017 (7th Cir.1996). Managers at Progressive testified variously that they did not know about Timm's situation, or that they knew but that Timm had refused to identify her assailant. Timm testified, however, that she complained to Ed Jones, a supervisor, about Tunnell by name; Jones confirmed this and testified that he relayed the complaint to Mike McCormick, one of the firm's top executives, who did nothing with the information. According to Jones, McCormick was unconcerned because he thought that Timm was not going to stay with the firm for long. Todd Alton, manager of the plant where Timm worked, remarked that Timm "leads guys on" and disregarded her complaint. Tunnell testified that no one in management ever asked him to stop harassing Timm. The jury was entitled to believe the testimony of Timm, Tunnell, and Jones and to conclude that Progressive knew about the harassment, knew who the perpetrator was, and decided not to lift a finger. Jim Simonovich, a member of the family that owns the firm, testified that he heard about the sexual harassment but did nothing because Timm "never filed a formal complaint"—a bizarre response, for all of the firm's owner-managers testified that Progressive followed an open-door system and lacked a formal complaint procedure. A jury might conclude that an employer deserves to pay punitive damages for indifference to its employees' rights when it invites them to approach supervisors informally, then ignores problems for lack of "formal complaints". Cf. *Smith v. Wade,* 461 U.S. 30, 45–49, 103 S.Ct. 1625, 1634–37, 75 L.Ed.2d

632 (1983). The size of the award ($15,000 after a remittitur) cannot be described as excessive in relation to the harm that unchecked sexual harassment can inflict.

■■■ Timm quit about six months after starting work, and the jury may have thought that she left to take a better job, rather than because of Tunnell's boorish conduct. That could explain the decision not to award back pay. The lack of compensatory damages is harder to reconcile with the award of punitive damages—though the fact that Timm, a former prison guard, is no stranger to rough treatment, coupled with the lack of an instruction about nominal damages, may play a role. At all events, Progressive did not ask the district judge to order the jury to continue deliberating until it came up with consistent verdicts. Instead it used the lack of compensatory damages as the fulcrum of an argument that punitive damages are legally impossible. One answer could be that there is no priority among inconsistent verdicts; if the verdicts cannot be reconciled, the whole case must be retried. *American Casualty Co. v. B. Cianciolo, Inc.*, 987 F.2d 1302, 1305 (7th Cir.1993). A judge cannot treat one verdict (here, the lack of a compensatory award) as the jury's "true" disposition to which the other verdict must be conformed; one could as readily say that the award of punitive damages requires a compensatory award too. If inconsistency escapes notice until after the jury has disbanded, the proper thing to do is to hold a new trial. *Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963); *Turyna v. Martam Construction Co.*, 83 F.3d 178 (7th Cir.1996); *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 677–78 (7th Cir.1985). A retrial is unnecessary here, however, because punitive damages are not inconsistent with the lack of compensatory damages.

■■■ *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344 (7th Cir.1995), and *Lebow v. American Trans Air, Inc.*, 86 F.3d 661, 669 n. 11 (7th Cir.1996), hold that punitive damages are available under 42 U.S.C. § 1981a (part of the Civil Rights Act of 1991) even when the jury does not assess compensatory damages. Progressive thinks that these cases are distinguishable because the plaintiffs received back pay, but why should this make a difference? Sex discrimination can cause a loss of income, for which back pay would compensate, but the fact that the victim can find better-paying work and therefore does not receive back pay does not extinguish other remedies. *Hennessy* remarked that "[n]othing in the plain language of § 1981a conditions an award of punitive damages on an underlying award of compensatory damages." 69 F.3d at 1352. Extra-statutory requirements for recovery should not be invented. We reached the same conclusion about 42 U.S.C. § 1983 years ago:

> The question remains whether punitive damages can be awarded when the jury has awarded no compensatory or at least nominal damages to a particular plaintiff. Punitive damages (as awarded here) are applicable even in the absence of actual damages, *Sahagian v. Dickey*, 827 F.2d 90, 100 (7th Cir.1987); *McKinley v. Trattles*, 732 F.2d 1320, 1326 (7th Cir.1984), despite local law to the contrary. *Wilson v. Taylor*, 658 F.2d 1021, 1033 (5th Cir.1981). Although state law may not allow punitive damages without a compensatory award, under federal law, when a jury finds a constitutional violation under a § 1983 claim, it may award punitive damages even when it does not award compensatory damages. The scope of punitive damages in § 1983 actions is governed by the "federal common law of damages" which imposes uniformity when enforcing the Civil Rights Acts. *Lenard v. Argento*, 699 F.2d 874, 897 (7th Cir.1983); *Basista v. Weir*, 340 F.2d 74, 87 (3d Cir.1965).

*Erwin v. Manitowoc County*, 872 F.2d 1292, 1299 (7th Cir.1989). No reason comes to mind for reading a compensatory-punitive link into § 1981a or Title VII but not § 1983.

■■■ Of course, a plaintiff must suffer *some* injury to have standing. Timm testified to circumstances that demonstrate injury. "Testers" in housing-discrimination cases are allowed to recover exemplary damages even though they do not want to occupy the apartments for which they apply, and the experience of discrimination is brief (indeed, testers usually do not know that discrimina-

tion was at work until learning that persons with other characteristics were able to lease or buy property). See *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982); *Gladstone v. Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). Similarly, *Tyus v. Urban Search Management*, 102 F.3d 256, 266 (7th Cir. 1996), holds that persons who do no more than read newspaper advertisements that depict racially unbalanced groups of models may be entitled to punitive damages. Nothing in the jury instructions invited the jurors to award punitive damages even if they believed that Timm had not been the victim of sex discrimination. Perhaps the jurors preferred to award a single sum under the punitive category rather than apportion between compensatory and punitive damages. No matter the jury's thinking, however, the award has no legal flaws, and the judgment therefore is

AFFIRMED.