**Brad J. TURYNA, Plaintiff–Appellee,**

v.

**MARTAM CONSTRUCTION CO., INC., Defendant–Appellant.**

No. 95–1278.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 1, 1995.

Decided May 7, 1996.

Rehearing Denied May 30, 1996.

James F. Hendricks, Christine A. Greener (argued), Brittain, Sledz, Morris & Slovak, Chicago, IL, for Brad J. Turyna.

Gail C. Kalinich, Ross & Hardies, Chicago, IL, Paul T. Kalinich (argued), Kalinich & McCluskey, P.C., Glen Ellyn, IL, for Martam Const. Co.

Before POSNER, Chief Judge, and MANION and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Murphy's Law was in full operation when the district court submitted this case to the jury, when the jury considered it, when the court received the verdict, and when judgment was rendered. Because the verdict as returned appears to be internally inconsistent, and the form itself is hopelessly confused, we reluctantly reverse and remand for a new trial.

**I**

The underlying lawsuit was relatively straightforward. Brad Turyna went to work for Martam Construction (Martam) as a truck driver in January 1986. He worked there until September 26, 1989, when he was fired. Almost two years later, Turyna filed this lawsuit against Martam, Tamas Kutrovacz (owner and president of Martam), and Claude Koenig (a vice-president of Martam), claiming (1) that Martam owed him overtime pay from September 19, 1988, through September 26, 1989, under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, and (2) that his firing violated the public policy of Illinois and FLSA, 29 U.S.C. § 215(a)(3), because it was retaliatory in certain respects. The case went to trial in May 1994 before a jury. At the close of Turyna's case, the court entered a judgment as a matter of law on a supplemental claim of breach of an oral contract, but the overtime and retaliatory discharge claims were allowed to proceed.

The case was submitted to the jury on a form that wasn't quite a general verdict form, but it wasn't special verdicts under Federal Rule of Civil Procedure 49(a) or a general verdict with interrogatories under Rule 49(b) either. For ease in understanding what follows, we have attached the three-page form to this opinion as Appendix A. It asks the jury to indicate for each Count

whether it ruled for plaintiff or against plaintiff, with respect to each defendant. The word "Damages" then appears in the middle of the second page, with blanks for the jury to complete with amounts for compensatory damages and punitive damages. With respect to damages, the court instructed the jury as follows:

Now, if you find in favor of defendants on both Counts I and II, then you, of course, need not consider the issue of damages. If, however, you find in plaintiff's favor on Count I and/or on either or both parts of Count II, then you will need to consider the issue of damages.

While the jury was out, there was a colloquy on the record between the court and defense counsel. The court informed counsel that he would like the lawyers to stay within five minutes of the courtroom, because he hated to have the jury wait once it was ready with a verdict. Mr. Kalinich, Martam's lawyer, responded by saying "I was going to waive the presence." The judge indicated that the lawyer was free to do so, but the judge wondered if the client would agree to the waiver. Mr. Kalinich assured him that the client would agree, and the court excused him. At oral argument, we learned that plaintiff's counsel was also absent from the courtroom when the jury returned its verdict. Thus, no one with any incentive to take action was present when the next events occurred, with the exception of the district judge.

When the jury returned with its verdict, the court confronted a situation that was confusing at best. The jury checked the lines "for plaintiff" with respect to all three defendants on Count I, which was labelled "Fair Labor Standards Act." It checked the lines "against plaintiff" for all three defendants for both "Count II—Retaliation under Fair Labor Standards Act," and "Count II—Retaliation under Public Policy of Illinois." In the section labelled "Damages" the jury filled in the amount of $3,109.22 as compensatory damages, which it identified as unpaid overtime wages. Part (b) of the Damages section asked the jury whether it wished to award the plaintiff punitive damages under Count II, and if so, in what amount. However-

er, upon turning the page the jury reached a new "Count II—Retaliatory Discharge under FLSA" section. This time, it checked "yes" for defendant Martam, and wrote in $35,618.01; it checked "no" for the other two defendants.

Faced with this document, the district court entered judgment on the verdict, awarding Turyna $3,109.22 in compensatory damages, liquidated damages of $3,109.22 as required by the FLSA, and punitive damages against Martam in the amount of $35,618.01. The court then discharged the jury. A few days later, Martam filed a timely post-trial motion under Rule 59(e), seeking to amend the judgment on Count II to set aside the award of punitive damages. The court denied that motion, and this appeal followed.

## II

Before this Court, Martam argues strenuously that there can be no award of compensatory or punitive damages to a plaintiff where the jury has found the issue of liability in favor of the defendant—an unexceptional enough proposition, if we could be sure that was · what happened. In the alternative, Martam argues that in the absence of compensatory damages for the retaliation claim, it is error to award punitive damages, if perchance the jury meant to indicate that the discharge was wrongful under federal law but did not inflict any actual damages. Turyna retorts that the judgment was correctly entered because the verdict was, in substance, a general verdict accompanied by interrogatories under Rule 49(b) and thus the court was entitled to enter judgment in accordance with the specific answers notwithstanding the inconsistent general verdict. Turyna also argues that his judgment should stand because Martam waived its objections to inconsistencies in the verdict by its waiver of presence when the verdict was returned. Finally, Turyna disputes Martam's claim that punitive damages must rest on an award of compensatory damages.

The first, and as it turns out the last, question for us is whether this verdict is salvageable. There are only three logical possibilities: it is a general verdict for some-

one; it is several special verdicts pursuant to Rule 49(a); or it is a general verdict accompanied by answers to interrogatories pursuant to Rule 49(b). As noted before, Martam argues that the verdict is "really" a general verdict for the defendant, accompanied by surplusage on the issue of damages that must be disregarded, while Turyna urges that we should treat it as a Rule 49(b) verdict in which the judge exercised his discretion to give primacy to the answers to the interrogatories. We consider each of the three logical possibilities in turn.

It seems most likely that the court intended to submit a general verdict form to this jury. General verdicts simply ask the jury to answer the question "who won," and if the winning party is entitled to a monetary award, to answer the question "how much." The verdict form reproduced in Appendix A does precisely those two things. Read one way, the jury gave inconsistent answers to those two questions: it said that Martam won (on Count II), but that it had to pay Turyna punitive damages. Read another way, the verdict is even more confused: asked the first time who won on Count II, the jury responded "Martam," but asked the second time it responded "Turyna."

■ When a jury returns a factually inconsistent general verdict, the verdict cannot stand. *Gordon v. Degelmann*, 29 F.3d 295, 299 (7th Cir.1994); *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 677–78 (7th Cir.1985). When Martam raised its objection to the verdict in the Rule 59(e) motion, thereby calling the court's attention to the problems with the verdict, assuming for the moment that the court considered this to be a general verdict form, the court should have ordered a new trial on Count II. The problem with Martam's suggestion that the court should have simply disregarded the jury's response to the punitive damages question is that we do not know which part of the jury's verdict should control. It would do just as much violence to the jury's factual findings to give primacy to its answer on the liability issue, ignoring its response on damages, as it would to do the reverse. If this is a general verdict, it is fatally inconsistent.

■ Neither party argues seriously that this verdict complied with the requirements of Rule 49(a), and for good reason—it does not. Rule 49(a) contemplates a "special written finding upon each issue of *fact*." (Emphasis added.) In this case, the jury might have been asked whether Turyna worked overtime for the year in question (and how many hours), or whether he was asked to haul inappropriate materials, or maybe even whether Martam's decision to fire him was retaliatory in nature. The jury here was asked no such things, as the form makes clear. Thus, nothing in Rule 49(a) can save the verdict.

Rule 49(b) blends the devices of the general verdict and the special verdict, by allowing the court to give the jury both the general verdict form and written interrogatories on particular issues of fact. Because this almost invites contradictory and inconsistent answers, the rule also addresses what the court should do when the general verdict and the answers to the interrogatories are not harmonious. If the answers are internally consistent, but one or more is inconsistent with the general verdict, the court has a choice among entering judgment in accordance with the answers (and disregarding the general verdict), returning the case to the jury for further deliberation, or ordering a new trial. When the answers are not internally consistent, and one or more also conflicts with the general verdict, the court has only two choices: return the case to the jury, or order a new trial. When faced with interrogatories that might conflict with a general verdict, the court must take the view of the case that reconciles the interrogatories with the general verdict. *Crossley v. General Motors Corp.*, 33 F.3d 818, 821 (7th Cir.1994); *EEOC v. Century Broadcasting Corp.*, 957 F.2d 1446, 1460 (7th Cir.1992).

Here, of course, the middle option of returning the case to the jury was, as a practical matter, not available because all parties waived their right to be present when the verdict was returned. This decision was regrettable, because it seems plain that one if not both parties would have called the inconsistencies to the court's attention and tried to obtain further clarification from the jury that

heard the case. It is also regrettable that the district judge did not spot the problems with the verdict on his own motion. Once the jury was discharged, the opportunity to correct the error promptly was forever lost. Martam's Rule 59(e) motion was adequate to raise the problem with Count II before the district court for purposes of appellate review, but it was no substitute for being present while the jury could still serve. The consequence has been wasted time for everyone, if we assume that the jury might have reconsidered either its answer on liability or its answer on damages.

Nevertheless, there is an even more fundamental problem with the hypothesis that the district court was using Rule 49(b), which flows directly from our discussion of Rule 49(a). This jury was never asked any particular factual questions about the case, and Rule 49(b) plainly states that the written interrogatories must be "upon one or more issues of fact the decision of which is necessary to a verdict." Although the amount of damages is an issue of fact, this fact is specif-

ically determined by the jury even under a general verdict form. Asking only this question cannot transform a general verdict into one under Rule 49(b). No particular issues of facts about the case were before the jury, and thus there was nothing upon which the court could rely as "interrogatories" that were consistent with one another but not with the general verdict. We cannot infer answers to issues of fact from the verdict form as a whole because of the inconsistencies noted before. Thus, nothing in Rule 49(b) eliminates the need for a new trial here.

## III

Even if we have somehow overlooked a way of reading this verdict that might, at a stretch of the imagination, support a verdict for one side or the other of this case, we are convinced that it is sufficiently confused that a new trial on Count II is necessary.[1] We therefore REVERSE and REMAND for further proceedings.

---

1. Martam did not appeal the verdict on Count I. The arguments Martam has raised on appeal do not undermine the validity of that award. According to the parties, that judgment has been paid and satisfied.

## Appendix A

ORIGINAL

attachment

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAY 25 1994

H. STUART CUNNINGHAM, Clerk
UNITED STATES DISTRICT COURT

| BRAD J. TURYNA, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| MARTAM CONSTRUCTION, INC.,<br>TAMAS KUTROVACZ and | : | |
| CLAUDE KOENIG, | : | |
| Defendants. | : | NO. 91 C 5965 |

### VERDICT

We, the jury, unanimously find with respect to the claims of Plaintiff, Brad Turyna, as follows:

(Place an "X" on the appropriate line for each Defendant and each count.)

### COUNT I — FAIR LABOR STANDARDS ACT

| As to: | For Plaintiff | Against Plaintiff |
|---|---|---|
| Defendant, Martam Construction, Inc. | X | |
| Defendant, Tamas Kutrovacz | X | |
| Defendant, Claude Koenig | X | |

**184**

## COUNT II — RETALIATION UNDER FAIR LABOR STANDARDS ACT

| As to: | For Plaintiff | Against Plaintiff |
|---|---|---|
| Defendant, Martam Construction, Inc. | | X |
| Defendant, Tamas Kutrovacz | | X |
| Defendant, Claude Koenig | | X |

## COUNT II — RETALIATION UNDER PUBLIC POLICY OF ILLINOIS

| As to: | For Plaintiff | Against Plaintiff |
|---|---|---|
| Defendant, Martam Construction, Inc. | | X |
| Defendant, Tamas Kutrovacz | | X |
| Defendant, Claude Koenig | | X |

### DAMAGES

(a) Plaintiff, Brad Turyna, is awarded $ _3,109.22_ in compensatory damages, itemized as follows:

| | |
|---|---|
| Unpaid overtime wages | 3,109.22 |
| Lost Wages, accruing from the date of discharge to the date of trial | 0 |

(b) Do you award Plaintiff, Brad Turyna, punitive damages under Count II, and if so, in what amount? (As to each defendant, either (1) place an "X" on the YES line and fill in the amount or (2) place an "X" on the NO line.)

2

COUNT II - RETALIATORY DISCHARGE UNDER FLSA:

Defendant, Martam
 Construction, Inc. YES____✓____ $ 35 618.01

 NO_____

Defendant, Tamas Kutrovacz YES_____ $___0_____

 NO____✓____

Defendant, Claude Koenig YES_____ $___0_____

 NO____✓____

SO SAY WE ALL.

_May 25, 1994_
Date

_Doa Pontervini_
Foreperson

_Kathleen Unterschutz_

_(signature)_

_(signature)_

_Mary L. O'Connor_

_(signature)_

_Edward H. Vallin_

3